Harry G. Wellington v. Commissioner.
Harry G. Wellington v. Commissioner
Docket No. 16816.
United States Tax Court
1951 Tax Ct. Memo LEXIS 276; 10 T.C.M. (CCH) 318; T.C.M. (RIA) 51097; March 30, 1951
*276 Spaulding F. Glass, Esq., 135 S. La Salle St., Chicago, Ill., for the petitioner. George T. Donaghue, Jr., for the respondent. OPPER
Supplemental Memorandum Findings of Fact and Opinion OPPER, Judge: On May 16, 1949, a Memorandum Findings of Fact and Opinion was entered in this proceeding, and on June 30, 1949 decision was entered [,). On September 12, 1949, without opposition from respondent that decision was vacated and petitioner's motion to reopen the proceeding was granted in order to afford petitioner the opportunity to offer additional evidence in the light of , which had been decided in the meantime. As a result of the further hearing, we make the following.. Petitioner and his wife, Blanche, never had a joint bank account until July 1, 1942. On that date a joint bank account in their names was opened at the Cosmopolitan National Bank of Chicago which was maintained during the taxable period. A safety deposit box was maintained by petitioner and the business at the same bank, which Blanche was authorized to open during the period in controversy. She never visited the box at any *277 time. In 1943 petitioner decided to dissolve the corporation of Wellington Trunk and Case Company after discussions with Paul Preston, attorney for petitioner and the corporation. In all his dealings with the corporation, Preston dealt only with petitioner. Preston was informed that Husar, petitioner's wife's brother, had no interest in the business, but had merely made loans, and that Husar would accept whatever amount petitioner offered in exchange for the stock nominally in Husar's name. Petitioner and Preston desired that Blanche should be recognized as a partner in the business, and that she should receive legal title to one-half of the corporate stock and assets upon liquidation, in order that she might purport to make a capital contribution to the business. Blanche took no part in the discussions or decisions, and she was present only when it became necessary for her to execute legal instruments. Pursuant to the above plan, the corporate records show formal transfers of stock from petitioner and Husar to Blanche whereby she purported to acquire title to one-half of the corporate stock. Payments totaling $4,200 were subsequently made to Husar by checks drawn on the alleged *278 partnership's bank account and on the joint bank account. All checks were drawn by petitioner. During the period from July 1, 1943 to December 31, 1943, Blanche made no deposits in the business bank account or in the joint bank account. She maintained no other bank accounts. She never exercised her authority to draw checks upon the business bank account. Checks drawn on the firm bank account, and made payable to Blanche as her purported share of the profits, were endorsed in Blanche's name by petitioner and deposited by him in the joint bank account. All checks charged to Blanche's drawing account on the books during that period were endorsed in her name by petitioner. Petitioner drew checks on the joint bank account to pay for personal, household and family expenses. Petitioner drew upon the joint bank account to pay his Federal income tax, to pay premiums upon an insurance policy on his life, and to purchase Government bonds in their joint names. Petitioner regularly gave cash to Blanche for household expenditures. She did not know whether the cash was drawn from the business or from the joint bank account. In addition Blanche drew checks on the joint bank account for personal, *279 family and household expenses. Blanche did not invest any portion of her purported share of business profits. Blanche did not retain a copy of the purported agreement of partnership; she never saw a statement of her purported interest in the business; she never examined a profit and loss statement for the taxable period; she did not know what were the partnership profits for that period; she never saw the checks drawn to her order which were endorsed in her name by petitioner; and she never questioned him concerning those checks. Petitioner made out Blanche's 1943 estimated tax return without previously consulting her; he signed her name to the return; he mailed a check in her name in payment of an installment of the estimated tax; and subsequently he informed her that he had taken care of her income tax. Petitioner habitually signed Blanche's name to legal documents. Petitioner did not, during any part of the taxable period, in good faith and acting with a business purpose, intend to join with his wife in the conduct of the business of Wellington Trunk and Case Company. Opinion Although the opinion in this proceeding was originally handed down before the decision in , *280 all of the tests suggested there support the result originally reached both on the earlier record and in the light of such evidence as was produced at the further hearing. The agreement, the conduct and relationship of the parties and their statements, the other testimony, and particularly the obvious domination of the business and of all relevant activities, including control of the income, by petitioner, seem to us to permit no other ultimate conclusion than the one we have again stated in the supplemental findings of fact. For these reasons and those set forth in the original opinion we adhere to the findings of fact and opinion heretofore issued as supplemented by what is now being said. In order to permit the necessary adjustments, and in accordance with our prior ruling, Decision will be entered under Rule 50.